Welcome to the Ninth Circuit. We are very pleased to have Judge Danny Boggs of the Sixth Circuit sitting with us. And we will hear the relatively few cases today in the order they appear on the calendar. We, as usual, will allow you to reserve time, but will not monitor the time for you. The secret is that I will give you one minute in rebuttal anyway. And we will begin with the first case, United States v. Zieske. Thank you. Good morning, Your Honors. My name is Myra Sun and I represent Richard Zieske. The indictment in this case charged my client with engaging in a fraudulent scheme that led to his receiving just about $96,000 from Roy Bala. My client's defense in this trial was that this transaction was not an investment, but a loan that he negotiated with Mr. Bala and did not fully repay. The Court will notice that the record shows that he paid about $62,000 of that back. These facts, I think, make clear that my client's defense was that he did not have a fraudulent intent to take Mr. Bala's money. And what matters in this case, if I can begin with the issue of his sentence, is the nature of that negotiation. The District Court did not make specific findings about the imposition of a vulnerable victim enhancement against Mr. Bala. It led to a two-level enhancement and raised my client's guideline range such that the high end of the range, 51 to 63 months, the high end, 63 months, was actually nine months lower than the sentence my client ultimately received. And I wanted to emphasize to this Court that while Mr. Bala was suffering from certain medical conditions, and these were amply described in the governance brief and brought up at trial, in fact, the standard for imposition of a vulnerable victim enhancement comes from the—it talks about unusual vulnerability. Once you've established some amount of vulnerability, the issue is whether it is unusual. And the cases that I did supplement Tuesday talk about the difference between characteristics that a victim typically will have in a case, and in those cases, they involved trafficking victims. Many of them will be poor. Many of them will be disadvantaged in terms of their ability to get themselves out of a situation. But the question is whether it's unusual. And in this case, I would submit it's not unusual. Do you agree that the review is for plain error because there was no objection at trial? There was no objection. Right. It is for plain error, but I think that the Supreme Court has recently told us that when a guideline calculation is incorrect, that the—that there's usually going to be a serious error, and that is true in this case mathematically. We also raise an enhancement—raise a challenge to sophisticated means, and then we also raise—and we raise a challenge to loss. And if I could turn now to the trial issues. Can I just ask a question? Yes. In terms of the plain error, the district court didn't actually announce that he was applying, so how could you have objected? You would have had a—I mean, I guess—I'm sorry, what? I think that's true. I mean, there was a great deal of back and forth at this sentencing. There was a lot of discussion about imposition of the financial hardship enhancement, and the court ultimately decided it would not impose that. And my understanding is he then gave a calculation, but he never actually ascribed it to the vulnerable victim. You could sort of figure that out retroactively. Figure that out retroactively because the government provided a very concise chart of what it was seeking. It was in the pre-sentence report, though, wasn't it? In order to get to the number that he applied, to get to the range that he applied, you had what was in the pre-sentence report, and then you knocked out the financial hardship, the two points for that, right? Right. I thought this was not in the pre-sentence report. Right. The pre-sentence report—the pre-sentence report writer did not endorse that. This might be a good time to tell the court I'd like to save three minutes for rebuttal. Okay. So I think that it is the case that this is something that was imposed as part of the sentence, and the court told us that it thought 72 months was the right sentence within a range that it chose that included vulnerable victim. But we think that that was erroneously imposed, and so I wanted to call the court's attention to that. It goes to the fact that my client's defense at this trial was that there was a loan, that it was a transaction that he negotiated with Mr. Bala, and that there was not the taking advantage of the defraudulent scheme. But he lost that defense, and that's not very useful. He lost on that defense at trial, but the issue of whether Mr. Bala was vulnerable is still an open question for purposes of sentencing in terms of my client's culpability. Right, but not the question of whether it was a loan or wasn't a loan. Right. This is just really a way for me to try to pivot to some of the trial issues, Your Honors. We raised an issue of variance, and I understand the government's argument that the instructions in this case didn't call for my client to be convicted, didn't require my client to be convicted based on what I'll call the Ty Lee scheme, the part of the scheme, the claim that my client got $50,000 from Mr. Lee, this grandmaster. And the variance, but the variance, it is true nonetheless, even if it isn't a fatal variance, that my client didn't have notice that he had to defend against a piece of the scheme that the government alleged only once trial began, and that was that my client went to Mr. Lee to get money to pay back Mr. Bala. And that this is, in other words, it's adding sort of a Ponzi component to the scheme that simply was not charged in the indictment, and that is our point with respect to the variance. It also goes over into the issue of Rule 404B error that we raised. And to be clear, my reading of this record is that there is an audio, which is Government's Exhibit 112. That is the conversation that Mr. Bala recorded when he spoke to Mr. Zesky. And my client talked about how he wanted to make money from his business, light auditing, in order to repay Mr. Bala, and that's why he got the money from Mr. Lee. The government didn't show, and I don't think they're going to say today, that my client literally used the Lee money to repay Bala, and they're not going to be able to show that my client failed to use it for light auditing. That's not, that proof isn't in the record. And finally, we know, of course, that this money was apparently turned over to my client in cash, and there is no connection to the use of the wires in any way. So that this component of the government's evidence simply did not support it being part of the scheme. It bears also on the restitution. As the court will know, the district court chose to impose $50,000 in restitution based on Mr. Lee's testimony that he'd given $50,000 to my client. And there is a loan note that was slightly less. I think it's $46,000 something. There is some lack of, there is really no documentation of the kind that this court typically expects for purposes of restitution in, for purposes of imposing an order of restitution. There was none of that kind of documentation, and so we believe that the restitution portion that includes the $50,000 should be vacated, leaving about the $34,000, I think, that it is thought my client still owed Mr. Bala. And the transaction also, the other piece of this case that's troublesome is the government's use of a portion of the plea agreement that my client entered into in his first conviction. And I have to be honest. The first thing that struck me that was troubling was the sort of ceremonial use of the plea agreement, this caption that says United States v. Richard Zesky, and then there's a portion that lists the charge, and then it goes into this very detailed, single-spaced, factual basis. That is a really troubling piece of evidence under Rule 404B, in part because the— I think you said they could have used the conviction, the fact of the conviction itself. Well, this is what I think. Under Rule 404B, its materiality really was very—the factual basis was very limited. That was extremely prejudicial. I'm sorry. Are you saying they couldn't have used the conviction itself? They—well, let me back up. My client never testified at trial. If he had gotten on the stand and said this was a loan— Well, right. Then I think he could easily have been cross-examined with the factual basis, didn't you? Yes, but their argument about why they were using the factual basis or anything was that he had—one of the—part of the fraud was lying about— admitting that he had some prior conviction, but lying about the circumstances of it. Or the scope of it, I guess, is what you're saying. Circumstances, because it wasn't the scope. He said it was all a big mistake, and certainly—yes, and also the scope. So that's the—that's their explanation for why they needed this material. And how else would they have gotten it in? Well, first of all, again, if my client's defense is that this was a loan, it did not mean that last time, when he was convicted of this other scheme, that either the scope of it or the details of it make the current transaction not a loan and fraudulent. That wasn't the—that wasn't the contention. The contention was that he specifically said things that were inconsistent, such as, I'm, you know, a retired stock trader, when A, he never had a license to be a stock trader, which was part of the earlier case, and B, he wasn't retired, he was banned because of the earlier conviction, and C, he—at least at the time he entered the plea— was not contending that he was taking the fall for someone else. So it demonstrates in various ways that what he told Mr. Bala about his past was not true. I think the fact of the conviction without the factual basis would have supported all of those premises, Your Honor. I understand that it was going to be used for that purpose, and I think the Court just asked me that, and I'm saying yes. The fact of the conviction could have been used for that purpose. I'm talking about the use of the factual basis, which made clear, in fact, that my client's prior conduct was not similar to the conduct that was alleged in the scheme here. But it wasn't being used for that purpose. It was being used to— Well, but there's a 403— Go ahead. There's a 403 prejudice that arises, the likelihood of the jury being— made about his past were not true. How would they prove it? I think that the representations that he made about his past put Mr. Bala on notice, and because the context of this case involved this theory— Well, you're saying—now you're saying they weren't entitled. But if I thought they were entitled, how would they prove it other than with this document? I think the fact of the conviction alone. I don't think that there was a need to put in the amount of the loss or the different entities that he purportedly used. Those aspects simply invited excessive prejudice. I mean, we often say that 404B evidence is prejudicial. Yes, to a point. But the government did not have to put in the entire factual basis to make the point that the court is suggesting they were entitled to make. And the district court certainly thought that there was a need to clarify the— what my client told Mr. Bala. I think, obviously, the defense— the other piece of this is I think the defense did not agree that Mr. Bala was utterly surprised by it. We did point out that this was, again, a very close-knit group. One of the members of it, Wonderful Morrison, did tell Mr. Bala that the sort of parameters of the conviction eventually, after this— Yes, eventually, after he'd given up the money. And she said he was not surprised. He was worried, but he was, quote, unquote, not surprised. That was her testimony. I thought she said she was shocked. I thought she said he was shocked. I thought she said that he was not surprised. And let me see. On rebuttal, Your Honor, I'll try and find the side I'm thinking of. Okay. Thank you very much. Good morning, Your Honors. May it please the Court. Michael Morgan for the United States. I'll just pick up where counsel left off with respect to the factual statement and the plea agreement. First off, I just want to point out that at trial, there was no objection. It was sort of like a nitpicking objection to, like, I don't want this, I don't want that. It was a wholesale objection that it shouldn't come in. And Judge Berdon has certainly recognized one reason why it was clearly admissible, is that it directly rebutted the statements that Mr. Ziske made to Roy Bala to induce his investment. But it was also relevant for a second reason. As the defense has pointed out, the defense in this case was this was a loan. There was not a shred of evidence to support that defense, but that was the defense. So evidence that he had engaged in a similar scheme previously is direct, is evidence to rebut that defense. It sounds like just propensity evidence to me. Well, the Court was given, well, the jury was instructed that it couldn't consider it for propensity. And that's all you're using it for on the theory you just heard. No, no, no. It's too early. You did it before. You must be doing it again, right? No, Your Honor. If you're going to deny the scheme existed, under this Court's precedence, evidence that you committed a similar scheme previously is evidence that is admissible to prove the scheme, to prove your fraudulent intent, to ---- What's the non-propensity inference you're asking the jury to draw in that scenario? What you're asking the jury to draw is not that he ---- it's propensity. It's that you're saying the set of facts that Mr. Bala testified to isn't true. So evidence that you previously engaged in a similar scheme is ---- It's propensity. That's what it is. Well, I ---- I mean, this happens all the time with the government's arguments under 404B. You say it's intent. You say it's a plan. It's always ---- I mean, when you say this proves intent, you're proving character. That's what you're ---- that's what you're claiming. I mean, I guess the short answer is your Court's precedence allow it. I mean, that's the answer, is that ---- I mean, I don't know why you're going there, because you have a pretty good argument. No. No. I want to be ---- I want to be candid to the reasons that it was admitted, but it was clearly admitted for, you know, for both purposes, and I think it's admissible under both. Can I ask you about the whole complex of stuff having to do with Mr. Lee? Is that his name? Yes. Okay. I mean, isn't a fair reading of the indictment? The indictment says, The essence of the scheme and artifice to defraud was to persuade investors, including an investor with the initials RB, to entrust Richard Zeisky with money by representing to them that he would invest the money in securities and earn the investment at a substantial profit, when in fact he intended to use and did use the funds for his own personal use. That's quite specific, and it's not what happened with regard to Mr. Lee. Right? Then ---- just a minute. And then you go on and you allege it was further part of the scheme and artifice to defraud that Richard Zeisky attempted to use his relationships with RB and RP to which I read as referring back to this earlier essence thing, investors, including certain people. But I'm not worried about including certain people. I'm worried about the fact that the allegation is that he had this plan to do what I read in number two, and he did it with regards to other investors. How would you get out of that, the notion that he went to this other person who not as an investor, I mean, is my understanding, but in any event not as part of this scheme that's described at the beginning and got some other money and never paid it back to him? But it just doesn't seem that it is part of the same thing. Well, I guess I could ---- I will answer your question, but there's an easier answer. But I'll answer your question first, which is paragraph 11, which is the paragraph that you were describing. That is, in fact, the Ponzi aspect of the scheme, is that I'm out there trying to solicit more investors because by this time he's already losing and spending Mr. Bala's money. One of those investors identified in the indictment is Bala's mother. And she was not solicited to turn over a 401K or anything like that. She was solicited because she had a piece of property that Mr. Ziske wanted to, quote, put to work, whatever that means. But what it certainly wasn't was the type of solicitation that was made to Mr. Bala, and the other two identified people in paragraph 11, which was to convert their 401Ks. So what this does show is that part of the scheme alleged and that the grand jury passed on was a scheme to solicit other people to invest, not specifically in securities, just to invest so that he could get more money. That was part of the allegations of the indictment. That's the indictment the grand jury passed on. Well, you just told me what happened with R.B.'s mother, but it's not in the indictment. Well, it's not, but it's in the trial record. I understand that, but one, I mean, one reading this would think that these people were investors of the kind that was referred to earlier as the essence of the scheme, and that that's what the allegation is, not this Ponzi thing, which is not in the indictment. Well, with respect, Your Honor, you don't have to use the word Ponzi. I understand that, but there's nothing in here about going to different people not to get them to invest money in securities and earn the investors a substantial profit, but for some other purpose, in some other scheme, not to sell them securities, but to do something else. Well, the indictment, paragraph 11, says additional funds from investors, not investors in securities. I understand that, but I'm trying to read the thing in context. I mean, what nobody has mentioned in the briefing here is that there's a paragraph about the essence of the scheme, and it says what the scheme was. Well, it's mentioned in our — in fairness, it's mentioned in our brief. We described that that's the basic core of the scheme. The basic core of the scheme was the securities fraud scheme. It had this tail-end scheme where he — part of the scheme, this tail-end of it, where he's trying to just solicit additional money. I'm not all that concerned about the variance part, but insofar as there is then a whole lot of testimony about Lee, and then Lee is — unless you can bring that in as a 404B again, and then the restitution to Lee, it seems to me — I mean, the variance, if Lee is otherwise coming in for some legitimate purpose, doesn't bother me that much. But the other uses of Lee bother me. Okay. With respect to the variance, Your Honor is correct that if it comes in for some other reason, even if it's not part of the charge scheme, it's not a variance. It's also not — even if it was a variance in this case, it would be completely harmless because the court's instructions ruled out any possibility that he could be convicted of the wire frauds other than for the bala fraud. And you're also correct that for the restitution part, he does have to be part of the charge scheme. Well, how do the instructions do that? Kathy, your argument is that the Lee thing was part of what he could be convicted of. For the wire frauds, no, because — Not for the wire frauds, I understand. And also, was the Lee incident after all the wire frauds? Yes. By months. By months. This was — as a factual matter, the Lee fraud happens after Bala's entire account has been liquidated. There's not a penny left. And what you have is Bala at that point trying to — like, I need money. I was supposed to get money. And then you have Mr. Ziske on tape saying that he solicited Lee in part to get money for Bala. Now, whether or not he intended to do that or not, he tells Bala this. That's obviously lulling behavior, right? He's trying to sort of calm him down. No, I'm going to get this money, and you're going to get your money someday. You're going to get your money someday. So the testimony about the Lee investment comes in for that reason alone, is that it's evidence of lulling behavior. It's, again, part of the scheme. It's evidence of lulling behavior. And it also puts in context the January 14 confrontation with Lee and Philbeck with Ziske when they confront him about what did you do with Master Lee's money? What did you do with Roy Bala's money? He doesn't really account for Lee, but he does say for Bala, oh, yeah, I lost it in the stock market, and I also used Philbeck's phony account to trade on it, which, by the way, that evidence is direct evidence of the scheme, and it rebutts the loan defense because he's not saying it was some sort of a loan. It's like, I lost it in the market. Oops. So the Lee testimony is admissible for those purposes as well. So even if you don't think it's part of the scheme, it's still coming in. But if it's not part of the scheme, then how does it get to the restitution? Well, I do agree that you have to find that it is part of the charge scheme for him to be eligible for restitution. The government agrees with that. For the reasons I've argued, I do believe it fits within the term of the indictment that the grand jury passed on. It's just an uncharged execution of paragraph 11. But the law is clear. You don't have to charge every single execution of a fraud scheme. So the fact, you know, the fact that, you know, there's no M.L. or it would be T.L. in paragraph 11 doesn't preclude the government from offering that additional proof, additional executions of the scheme. And I understand, Judge Burrs, on your point about reading the indictment as a whole, but I do think, I mean, the language in paragraph 11 is specifically, if the government wanted to limit it to securities investors, it could have just been, you know, securities investors instead of investors. And I think factually, when you look at the solicitation of Bala's mother, it does go to show that, like, this wasn't limited to that. Kagan. And that's completely irrelevant because it's not in the indictment. I mean, you told me something I didn't know, but why would anybody else know it either? Well, the grand jury would know it. That's the whole point. And the indictments don't have to be complete speaking indictments to every single thing. The question isn't whether the grand jury knew it. The question is whether the defendant knew it, that that's what he was being charged  with. Well, I mean, he is told that he's trying to get investors. Now, I suppose I could say that the defendant knows full well what he did. But I understand the Court's point for notice. And the notice is that he was trying to get additional investors at a period of time after he had lost Bala's money. I think that puts him on notice that the government believes he's trying to solicit money from other people as part of his plan to pay Bala back. That's a fair reading of this indictment. And that's a fair reading of what the evidence at trial proved. I want to quickly turn to sentencing. With respect to the vulnerable victim enhancement, this Court's decision in Peters should foreclose any claim that this was plain error. Peters holds that when you target a fraud scheme to a victim you have reason to know is financially vulnerable to that scheme, that victim qualifies as a vulnerable victim. Because the fraud statute is not targeted at just people who are in financial distress. It's just a general thing that it targets people for fraud. So when you focus your scheme on this limited universe of people, that qualifies you for a vulnerable victim enhancement. This isn't a case where somehow the nature of the crime takes the particular vulnerability into account in the nature of the crime. That's just not how fraud works. With respect to loss amount, can I ask you one thing there? I want to be clear that I've got the sequence here because we say correctly that the judge did not indicate why he was imposing the vulnerable victim in the way that you just argued. But I just want to be clear about the fact that he was doing it. The way I understand it, and tell me if I've got this wrong, is the probation office had a calculation that totaled up to 25 that included the financial hardship. They objected to a lot of things. The government asked for a vulnerable victim, and the probation office said no. So that's why it was sort of in play. Yes. Then at the sentencing hearing, the judge says, well, if I impose the financial hardship, I would get to 27, and that could only be true if he was taking your view of the vulnerable victim. He says, I'm not going to give you that, but it comes out to the same thing. Is that kind of how people knew the vulnerable victim was in play? Yes. And you're, I don't know if it was you, at the hearing, you give reasons that the judge should impose vulnerable victim. Yes. I don't think he does. He doesn't answer them per se. That's correct. The judge makes no specific finding about the vulnerable victim, but it definitely was in play for the reasons that Your Honor has just articulated. I just want to understand it, because when I first read it, I thought it was clearly in the pre-sentence report, and the answer is that's not in the original calculation. Right. Okay. Got it. That's how that plays out. With respect to sophisticated means, the nature of this fraud scheme and the way that the multiple brokerage accounts and bank accounts and the multiple wires in and out running this money to then funnel it out to Ziske's personal account, that falls well within the type of schemes this Court has held qualifies as sophisticated means. And one thing with respect to restitution that I want to point out, like, I understand the Court's concern about whether or not this is part of the charge scheme or not, but with respect to the question of whether or not there was a basis, a factual basis, for the $50,000 finding, it was in the pre-sentence report and the defendant didn't object. So the defense doesn't object to the pre-sentence report. The Court can rely on it as evidence of the scheme. I mean, Master Lee testified to it at trial that it was about $50,000, but the pre-sentence report says $50,000 and there was no objection. If we were to disagree with you on the notion that the Lee transaction was part of the indictment, so you said you concede that it can't be then the subject of a restitution order? Yes. I would say that it could be subject to loss amount for the guidelines, because the guidelines are different. But for restitution, the statute says it has to be part of the charge scheme. He doesn't have to be a named victim of the scheme, but it has to be the scheme, but the government does agree with that. Got it.  Thank you. Unless the Court has any further questions, I ask you to confirm. Thank you very much. Thank you. Thank you. Well, you have less than a minute, but we'll give you a minute. Go ahead. Okay. First of all, the worried but not surprised is at the first day of trial. Ms. Morrison testified the first day of trial, pages 130 to 131 of the transcript for the first volume. I don't know why that's relevant, given that Bala himself, I thought, testified that if he had known the details of the prior conviction, as he later found out, he would never have invested his money in the first place. So that seems to me the only relevant. Well, it seems this is part of, I think, the notion, the defense here was that my client negotiated a loan with Mr. Bala and that it was an arm's-length loan, that no advantage was taken of him. We do know that there was this situation which the holding company my client tried to have hold the investment vehicle, said no, because. But my point is that you're saying the fact of conviction alone was all the government needed. And I think Bala admitted that he knew, yeah, that the guy had been convicted, but what he didn't know were the particulars. And I thought he did testify at trial that had I known the particulars, my God, I would have never given the guy a red cent of my money. Well, but he never even said which particulars mattered to him. And that is why I think the worried but not surprised does bear on evaluating whether the factual basis had to come in for that purpose. I quickly want to comment on the sophisticated means. You know, the Ninth Circuit does this a lot of times, frankly, with these enhancements. The dictionary definition of sophisticated is, quote, highly complicated or developed, complex. Well, I mean, here he was, first of all, he had these phony entities, but also he was moving money around through a relatively large number of accounts and supposed entities and so on. It was not at all straightforward. It was really quite bizarre. With all due respect, what I think happened here is that money went to one account and it could be traced as it left those accounts. And I think it was like four other accounts. I mean, I'm not going to say there wasn't some movement going on, but whether it was quote, quote, highly complicated or developed. Creating phony institutions with phony documents, as I understand it, no? Well, that was the initial attempt with them. Right. So now we have phony entities, phony documents, four different accounts. After that didn't work, four different accounts, the money's going through. It really has to do with complicated or developed. The last point I wanted to make very quickly with respect to the indictment is Mr. Bala's mother didn't even testify at trial. The jury didn't hear that. There were these two other folks who did testify about my client trying to get them to invest. I really don't read paragraph 11 as, I don't really, I'm. Well, I mean, to me, paragraph 11 standing alone might read the way they said, but when you put it next to paragraph 2, it becomes much more questionable. That's what I think. I don't think paragraph 11 as a detail does what the government wants it to do. And this is the difficulty with 404B. It's really a matter of just expanding it beyond to where we get to 403 error. And that's what I think happened here. I don't know if the Court has any other specific questions. On the vulnerable victim, Your Honor, the one thing I want to point out is I didn't make a big deal about it before, but the district court chewed my client's lawyers out for what I thought was a rather odd reason, this whole ex post facto matter, and them claiming that the earlier guidelines needed to apply and their attempt to get the reduced offense level in part because of that. And the district court was pretty hard on them, sort of questioning their ethics, which I don't think, as a trial lawyer, what I think could happen is that you might definitely get thrown off and forget to raise vulnerable victim in that context. But more importantly, I think it's also important, as Judge Boggs noted, to realize that there was a lot of talk about this other enhancement. For my client's lawyers, what they saw was that the probation office said this is not a vulnerable victim case. I think that there was a bit of narrative in their report. I think that they were relying kind of on that. Okay. Thank you very much. Thank you for your arguments. And we will submit United States v. Zieske and go on to Schiff v. Liberty Mutual Fire Insurance Company.
judges: Boggs, Berzon, Watford